United States District Court
Southern District of Texas
**ENTERED**
June 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BALDWIN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-03921 |
| | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEM, INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

In August 2017, Hurricane Harvey ravaged the Texas Gulf Coast, wreaking havoc upon thousands of Texans. The storm hit Plaintiff Christopher Baldwin ("Baldwin") particularly hard, severely damaging his home in Baytown, Texas. Today, almost three years after the devastating storm, Baldwin's home still has not been fully rebuilt. He brings this lawsuit against Defendants Mortgage Electronic Registration System, Inc. ("MERS"), RoundPoint Mortgage Servicing Corporation ("RoundPoint"), and Great American E&S Insurance Company ("Great American") to recover the funds needed to complete the home repairs. Great American has filed a Rule 12(b)(1) Motion to Dismiss ("Motion to Dismiss"). *See* Dkt. 22. After carefully reviewing the motion, response, reply, and applicable law, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

Baldwin's lawsuit alleges as follows: In 2015, Baldwin purchased a home located at 3804 Winter Haven Drive, Baytown, Texas 77521 (the "Property"). To acquire the

home, Baldwin obtained a mortgage.  RoundPoint is purportedly the entity that "services" Baldwin's mortgage.  Dkt. 8 at 4.

Great American issued a Commercial Property Insurance Policy to RoundPoint covering the Property (the "Policy").  The Policy identifies RoundPoint, and only RoundPoint, as the insured eligible to receive proceeds under the Policy.  Baldwin is neither a named insured nor an additional insured under the Policy.

As a result of Hurricane Harvey, the Property sustained significant damage. RoundPoint made a claim under the Policy.  Great American investigated the loss, identified some covered damages, and issued payment to RoundPoint for $82,000. RoundPoint apparently took those funds and paid a contractor to work on the Baldwin home.

Baldwin has now sued Great American, claiming that he is entitled to sue as a third-party beneficiary and recover unpaid funds under the Policy.  Specifically, Baldwin has alleged causes of action against Great American for: (1) breach of contract; (2) promissory estoppel/detrimental reliance; (3) violations of the Texas Insurance Code; and (4) breach of fiduciary relationship.  This lawsuit was originally filed in the 334th District Court of Harris County, Texas.  Great American timely removed the case to this Court based on diversity jurisdiction.

Great American now moves to dismiss the claims brought by Baldwin.  Stated simply, Great American takes the position that Baldwin is not entitled to any benefits under the Policy because Baldwin lacks privity of contract and is not a third-party beneficiary under the Policy.

2

## LEGAL STANDARD

Before I address the underlying merits of the Motion to Dismiss, I need to determine if the motion is properly brought under Rule 12(b)(1).

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Subject matter jurisdiction fails if the plaintiff lacks Article III standing.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986).  Article III of the Constitution limits the scope of the federal judicial power to the adjudication of "cases" or "controversies."  U.S. CONST. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  The issue of Article III standing presents a "threshold jurisdictional question" in any lawsuit filed in federal district court.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  To establish standing, a plaintiff must show: (1) an injury in fact (2) that is fairly traceable to the defendant's challenged conduct, and (3) that a favorable judicial decision will likely redress the injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

In its Motion to Dismiss, Great American takes the position that since Baldwin is neither a party nor a third-party beneficiary to the Policy, he lacks standing to enforce the Policy.  The use of the term "standing" in this context does not call into question my jurisdiction to hear the case *per se*, but rather constitutes a merits-based argument that Baldwin should not prevail on a contract claim.  *See Cotton v. Certain Underwriters at*

3

*Lloyd's*, 831 F.3d 592, 595 (5th Cir. 2016) (explaining that the concept of standing is used to describe different things in law, such as the right to sue under a contract and the entirely distinct ability to satisfy the jurisdictional requirements of Article III).  In *Cotton*, although the plaintiffs were not named insureds, additional insureds, nor third-party beneficiaries of the flood policy, the Fifth Circuit held that they had Article III standing to bring claims against the insurance company because they alleged that they had been injured, the defendant caused the injury, and the requested relief would redress the injury.  *See id.*  The Fifth Circuit concluded: "We thus do not view the fact that the [plaintiffs] were not a named insured in the policy covering property they owned as a defect that goes to Article III standing."  *Id.  See also Bond v. United States*, 564 U.S. 211, 219 (2011) ("The question whether a plaintiff states a claim for relief goes to the merits in the typical case, not the justifiability of a dispute, and conflation of the two concepts can cause confusion.") (internal quotation marks and citation omitted).

Applying the Fifth Circuit's *Cotton* decision here, even if I ultimately conclude that Baldwin is not a third-party beneficiary to the Policy, Baldwin has Article III standing because he was allegedly harmed by a failure to pay him insurance proceeds and would directly benefit by a judgment against Great American and the other defendants.  "The issue of whether plaintiffs have 'standing' in the sense of a right to sue under the contract is better analyzed as whether they have stated a claim under Rule 12(b)(6)."  *Brown v. Am. Modern Home Ins. Co.*, No. CV 16-16289, 2017 WL 2290268, at *3 (E.D. La. May 25, 2017).

Although I do not think the proper procedural mechanism to raise merits-based arguments is under the rubric of a Rule 12(b)(1) motion, I have the ability to treat the current motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief could be granted. *See Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Flores v. ACT Event Servs.*, No. 3:14-CV-2412-G, 2015 WL 567960, at *7 (N.D. Tex. Feb. 11, 2015) (holding that although defendants improperly asserted their waiver defense through a Rule 12(b)(1) motion, "the court will assess the waiver defense as if the defendants had properly raised it through a Rule 12(b)(6) motion"); *Lopez–Santiago v. Coconut Thai Grill*, No. 3:13–CV–4268–D, 2014 WL 840052, at *3 n.4 (N.D. Tex. Mar. 4, 2014) ("District courts can in their discretion treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and analyze it under the Rule 12(b)(6) standard."). To facilitate my consideration of the underlying merits-based issues, I will transform Great American's Rule 12(b)(1) motion into a Rule 12(b)(6) motion.

To survive a Rule 12(b)(6) motion, Baldwin must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the Motion to Dismiss under Rule 12(b)(6), I must accept all well-pleaded facts as true, viewing them in the light

most favorable to Baldwin.  *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701

(5th Cir. 2017).

**DISCUSSION**

A.    **BREACH OF CONTRACT**

Baldwin bases his breach of contract claim on the premise that he is a third-party

beneficiary of the insurance policy Great American issued to RoundPoint.  A close

examination of Texas law directly on point lays bare the fallacy of Baldwin's argument.

It is bedrock Texas law that a third party to a contract may only recover on a contract

if the contracting parties intended to secure some benefit to that third party and entered into

the contract directly for the third party's benefit.  *See Stine v. Stewart*, 80 S.W.3d 586, 589

(Tex. 2002).  The benefit cannot be incidental, and courts "will not create a third-party

beneficiary contract by implication."  *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995

S.W.2d 647, 651 (Tex. 1999).  Rather, an agreement must "clearly and fully express" the

parties' intent to confer a direct benefit to the third party.  *Stine*, 80 S.W.3d at 589.  Texas

courts glean the parties' intention from the contractual language.  *See Union Pac. R.R. Co.*

*v. Novus Int'l, Inc.*, 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, pet.

denied).

There are two types of third-party beneficiaries: creditors and donees.  A party is "a

donee beneficiary if the performance promised will, when rendered, come to him as a pure

donation."  *MCI Telecomms. Corp.,* 995 S.W.2d at 651.  One is a creditor beneficiary if

the promised "performance will come to him in satisfaction of a legal duty owed to him by

the promisee," such as a contractual obligation.  *Id.*  Whether an agreement intends a direct

6

benefit on a third party so as to make that party a third-party beneficiary is a question of

law. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

There is a presumption against conferring third-party-beneficiary status on non-

contracting parties, and the would-be third-party beneficiary bears the burden of proof on

this issue. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007).

Accordingly, "[i]f there is any reasonable doubt as to the intent of the contracting parties

to confer a direct benefit on the third party, then the third-party beneficiary claim must

fail." *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929

(Tex. App.—Dallas 2005, no pet.). *See also Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex.

2011) ("All doubts must be resolved against conferring third-party beneficiary status.").

> Due to the presumption against finding third-party beneficiaries to
> contracts, courts will generally deny third-party-beneficiary claims unless:
> (1) the obligation of the bargain-giver is fully spelled out, (2) it is
> unmistakable that a benefit to the third party was within the contemplation
> of the contracting parties, and (3) the contracting parties contemplated that
> the third party would be vested with the right to sue for enforcement of the
> contract.

*Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 552 (Tex. App.—Houston [1st Dist.]

2012, no pet.).

I have carefully reviewed the Policy, and it contains no language that remotely

suggests that RoundPoint or Great American, the contracting parties, intended to contract

or confer a direct benefit to Baldwin, a third party, through the issuance of the Policy.[1]  To

---

[1] When deciding a Rule 12(b)(6) motion, a court may consider "the complaint, any documents
attached to the complaint, and any documents attached to the motion to dismiss that are central to
the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,

start, the Policy expressly identifies RoundPoint as the only named insured, and there are no additional insureds listed anywhere on the Policy.  This is extremely important, as it indicates that the contracting parties to the Policy did not specifically intend for Baldwin to benefit directly from the placement of the insurance.  *See Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) ("In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling.") (citation omitted).  To make it abundantly clear that the contracting parties did not intend to secure a benefit to Baldwin, they went so far as to include a contractual provision in the Policy expressly stating that "[m]ortgagors or tenants are **not** insureds or additional insureds under the policy."  Dkt. 22-1 at 55 (emphasis added).  I am honestly not sure what else the parties could have possibly done to make their intentions more evident.

It should be noted that it is not unusual for a lender to procure insurance coverage when the homeowner fails to maintain homeowner's insurance.  Such policies are referred to colloquially as "force-placed" or "lender-placed" insurance, and they "allow[] the lender to protect its exposure on a property up to the amount of the mortgage on the date of issuance."  *Williams v. Certain Underwriters at Lloyd's*, 398 F. App'x 44, 45 (5th Cir. 2010).  Importantly, the mere fact that RoundPoint, as the mortgage servicer, purchased an insurance policy on Baldwin's home does not automatically make Baldwin a third-party beneficiary.  *See Debes v. Gen. Star Indem. Co.*, No. 09-12-00527-CV, 2014 WL 3384679, at *4 (Tex. App.—Beaumont July 10, 2014, no pet.) ("The fact that a person is directly

---

594 F.3d 383, 387 (5th Cir. 2010).  It is, thus, fair game for me to examine the underlying insurance policy in evaluating the merits of the dismissal motion pending before me.

affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary.") (quotation marks and citation omitted); *Bennett v. Bank United*, 114 S.W.3d 75, 84 (Tex. App.—Austin 2003, no pet.) ("The fact that a person might receive an incidental benefit from a contract to which she is not a party does not give her a right of action to enforce the contract.").

Over the years, a number of Texas courts have faced fact patterns quite similar to the instant one, squarely holding that a homeowner does not qualify as a third-party beneficiary under a force-placed policy entered into between the insurance company and the mortgage company without express language conferring a direct benefit to the homeowner.  In *Garcia v. Bank of America Corp.*, 375 S.W.3d 322 (Tex. App.—Houston [14th Dist.] 2012, no pet.), for example, Garcia's home suffered significant damage as a result of Hurricane Ike.  Countrywide Home Loans ("Countrywide"), as mortgagee, obtained a force-placed insurance policy on the home from Newport Insurance Co. ("Newport").  Needing additional monies to repair his home after the storm, Garcia sued Newport under the insurance policy.  Although he was not a named insured per the terms of the policy, Newport alleged that he could enforce the contract as a third-party beneficiary.  The appellate court disagreed:

> [T]he parties to the policy, Newport and Countrywide, did not intend to provide any direct benefit to Garcia but merely contracted to protect Countrywide's secured interest in the property.  Garcia is not listed as a primary or additional insured in the policy.  Although he is listed in the policy as the owner of the property, mere identification by itself does not suggest that he was an intended third-party beneficiary.

*Id.* at 327.  The same analysis applies here.

Earlier this year, the First Court of Appeals addressed the identical third-party beneficiary argument in a Hurricane Harvey case. *See In re Am. Nat'l Prop. and Cas. Co.*, No. 01-19-00727-CV, 2020 WL 573250, at *5 (Tex. App.—Houston [1st Dist.] Feb. 6, 2020, orig. proceeding).  In that case, the devastating storm damaged the home of Mark Rennison ("Rennison").  Vanderbilt Mortgage Finance, Inc., the mortgagee of the property at issue, had purchased force-placed insurance on the Rennison home from American National Property and Casualty Company ("ANPAC").  After the hurricane, Rennison filed suit against ANPAC, seeking to recover under the policy for damage to his property.  In response, ANPAC sought to dismiss the case, arguing that Rennison was not a party or third-party beneficiary to the policy and had no right to sue under the insurance policy. The First Court of Appeals agreed that Rennison could not be a third-party beneficiary:

> As in *Garcia*, no provision of the ANPAC policy creates a duty owed to Rennison that benefits under the policy would satisfy.  As in *Garcia*, the mortgagee (Vanderbilt) contracted with the insurer (ANPAC) to protect the mortgagee's security interest in the property.  Rennison, the mortgagor, is not named in the policy, but only referenced as the mortgagor.  Even if the policy had named him, identification in a policy is not determinative of benefits.  No provision in the policy indicates an intent by the parties to make a gift to Rennison and thus, he is not a donee beneficiary.  And no provision in the policy creates a duty owed to Rennison because there is no contractual obligation or other legally enforceable commitment to Rennison.

*Id.* (citation omitted).  Once again, the same reasoning utilized by the appellate court applies to the case presently before me.

For a full five pages of his brief in opposition to the Motion to Dismiss, Baldwin simply copies and pastes portions of the *Alvarado* opinion from the First Court of Appeals. *See Alvarado,* 389 S.W.3d 544.  A close look at that case provides Baldwin no salvation.

While it is true that the *Alvarado* court found a third-party beneficiary theory to be viable in a force-placed insurance context, the policy at issue there—unlike the one here— contained specific provisions that called for insurance proceeds to be paid directly to the homeowner in certain circumstances.  The *Alvarado* court found that these provisions demonstrated a clear intent to benefit the homeowner, and thus, the homeowner was a third-party beneficiary.

Here, there is simply no Policy provision Baldwin can point to that manifests a clear intent to benefit him.  Unlike *Alvarado*, there are no endorsements in the Great American Policy which contemplate payment to Baldwin as the homeowner.  There is a standard mortgageholders clause in most homeowners' policies providing that the mortgageholder has the right to receive payments on the policy.  Tellingly, the Great American Policy expressly disclaims the standard mortgageholder provision.  *See* Dkt. 22-1 at 54 ("Section **2. Mortgageholders** . . . shall not apply").  As a consequence, Baldwin does not possess the right to receive any payments—or, for that matter, any benefit—under the Policy.  This precludes him from suing Great American under the Policy on a third-party beneficiary theory.

In a last-ditch effort to overcome the Motion to Dismiss, Baldwin asks me to take a look at the Deed of Trust for the Property.  The Deed of Trust provides that the lender may, at its option, apply insurance proceeds to a reduction of the promissory note or to the restoration or repair of the damaged Property.  The Deed of Trust further states that "[a]ny excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this [Deed of Trust] shall be paid to" Baldwin.  Dkt. 23-1 at 3 (emphasis

11

omitted).  This language, Baldwin contends, proves that there was an intent to benefit him, thus creating a third-party beneficiary situation.  This argument is completely misplaced. As Great American aptly notes: "the only intent that is relevant to [Baldwin's] status as a possible third-party beneficiary of Great American's Policy is the intent of Great American and RoundPoint, and that intent is determined **by the plain language of the insurance Policy**, not the Deed of Trust."  Dkt. 24 at 2–3 (emphasis in original).  Remember, it is the intention of the contracting parties to the Policy—the contract for which third-party beneficiary status is sought—that is controlling.  *See MCI Telecomms. Corp.,* 995 S.W.2d at 651 (holding that third-party beneficiary claims succeed or fail according to the provisions of the contract upon which suit is brought).  Therefore, the Deed of Trust is completely irrelevant for determining whether Great American and RoundPoint intended to confer third-party beneficiary status on Baldwin under the Policy.

In its reply, Great American objects to Baldwin's use of the Deed of Trust, claiming the document constitutes parol evidence and cannot be used to create an ambiguity in an insurance policy where none exists.  Additionally, the Deed of Trust is neither attached to the First Amended Original Complaint, nor referenced in the live pleading, meaning that I probably should not consider it in the context of a Rule 12(b)(6) motion.  Nonetheless, I recognize that we are at the Rule 12(b)(6) stage, and I must bend over backward to consider Baldwin's allegations in the light most favorable to him.  Even so, the Deed of Trust simply has no impact on the core issue of whether Great American and RoundPoint intended "to contract or confer a direct benefit to a third party . . . [as] clearly and fully spelled out" in the Policy.  *Id.*

12

To summarize, I conclude that Baldwin lacks third-party beneficiary status and is, therefore, precluded from bringing an action against Great American to enforce the Policy. Dismissal is proper on the breach of contract claim.

## B.   PROMISSORY ESTOPPEL

Baldwin's First Amended Original Complaint asserts a cause of action against Great American for promissory estoppel, with the theory being that Great American made a promise to Baldwin in the Policy to compensate him for the property damage he sustained as a result of Hurricane Harvey.  Because I have already determined that Baldwin's breach of contract claim fails under a third-party beneficiary theory, his promissory estoppel claim fails as well.  *See Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 761 (Tex. App.— Fort Worth 2012, pet. denied) ("For the same reasons [the plaintiffs] lack standing to assert a breach of contract cause of action, they likewise lack standing to assert a promissory estoppel cause of action.").[2]

## C.   CHAPTER 541 OF THE TEXAS INSURANCE CODE

Next, Great American seeks to dismiss Baldwin's claim against it brought under Chapter 541 of the Texas Insurance Code ("Chapter 541").  Chapter 541 provides a remedy for "unfair methods of competition or unfair or deceptive acts or practices" in the "business of insurance."  TEX. INS. CODE. § 541.001.  A plaintiff must be either a named insured or a third-party beneficiary of the policy out of which the claim arose to assert a claim under

---

[2] Although Great American sought to have the promissory estoppel claim thrown out at this early stage of the litigation, Baldwin did not address his promissory estoppel claim in response to Great American's motion to dismiss.  When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss, the claim is deemed abandoned.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

Chapter 541.  *See Pineda v. PMI Mortg. Ins. Co.*, 843 S.W.2d 660, 672 (Tex. App.—

Corpus Christi 1992, no writ).  Since Baldwin is neither a named insured nor a third-party

beneficiary of the Policy, his Chapter 541 claim must be dismissed.[3]  *See Barrios v. Great*

*Am. Assur. Co.*, No. CIV.A. H-10-3511, 2011 WL 3608510, at *4 (S.D. Tex. Aug. 16,

2011) ("Likewise, the plaintiffs' Texas Insurance Code claims fail because . . . they are not

named insureds, additional insureds or third-party beneficiaries.").

### D.    BREACH OF FIDUCIARY DUTY/CONSTRUCTIVE TRUST

The next cause of action brought against Great American is for breach of fiduciary

duty and constructive trust.[4]  Great American moves to dismiss this claim on the ground

that Baldwin has failed to allege sufficient facts to demonstrate that a fiduciary relationship

existed between Great American and Baldwin.  I concur.

Texas law views the fiduciary relationship "as an extraordinary one [that] will not

be lightly created."  *Chapman Children's Tr. v. Porter & Hedges, LLP*, 32 S.W.3d 429,

439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  There are two types of fiduciary

relationships: (1) a "formal" relationship in which a duty arises as a matter of law (such as

attorney-client, principal-agent, trustee-beneficiary, or between partners in a partnership);

and (2) an "informal" relationship arising from a moral, social, domestic, or personal

relationship called a "confidential" relationship.  *See id.*

---

[3] Baldwin also failed to respond to Great American's motion to dismiss with respect to the Chapter 541 claim, thereby abandoning the Chapter 541 claim.  *See Black*, 461 F.3d at 588 n.1.

[4] A constructive trust is not a separate cause of action, but merely a remedy for the breach of a fiduciary duty.  *See Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc.*, 194. S.W.3d 580, 586 n.7 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

14

The First Amended Original Complaint is completely devoid of substantive allegations indicating that a fiduciary relationship existed between Baldwin and Great American.  The live pleading simply states over and over that a fiduciary relationship existed between Baldwin and all the Defendants, but these statements are nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements [which] will not do." *Twombly*, 550 U.S. at 545.  Even viewed in the light most favorable to Baldwin, the relationship between Baldwin and Great American was nothing more than that of an insurer and an insured, a relationship that is insufficient to give rise to a fiduciary duty.  *See Coterill-Jenkins v. Tex. Med. Assoc. Health Care Liab. Claim Tr.*, 383 S.W.3d 581, 593 n.7 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (finding no general fiduciary duty between insurer and insured); *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 318 (Tex. App.—Beaumont 2004, no pet.) (same).

To survive Great American's Motion to Dismiss on the fiduciary duty claim, the First Amended Original Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018) (internal quotation marks and citation omitted).  As far as the breach of fiduciary duty claim is concerned, the First Amended Original Complaint does not come close to meeting this requirement.  I, therefore, recommend that the breach of fiduciary duty claim be dismissed under Rule 12(b)(6).

Curiously, Baldwin does not argue that he has sufficiently pled a proper breach of fiduciary duty claim.  Instead, he merely requests "the opportunity to amend his complaint to add specificity to his pleadings." Dkt. 23 at 16.  This Court has already afforded Baldwin

one opportunity to replead, and he took advantage of that by filing a First Amended Original Complaint. Baldwin fails to explain why he needs to amend the lawsuit a second time, and how he could cure the current deficiencies to avoid dismissal. Accordingly, I deny Baldwin's request for leave to replead yet again. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 362 (5th Cir. 2002) (concluding that district court did not abuse its discretion by denying leave to replead where court had already given plaintiffs one opportunity to do so).

## CONCLUSION AND RECOMMENDATION

For the reasons identified above, I **RECOMMEND** that Great American's Rule 12(b)(1) Motion to Dismiss (Dkt. 22) be converted to a Rule 12(b)(6) motion and be **GRANTED**. The claims against Great American should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002—l3. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 8th day of June, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE