United States District Court
Southern District of Texas
**ENTERED**
March 01, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTOPHER BALDWIN, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:19-CV-03921 |
| § | |
| MORTGAGE ELECTRONIC § | |
| REGISTRATION SYSTEMS, INC., § | |
| ET AL., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion for summary judgment filed by Defendants RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Mortgage Electronic Registration Systems, Inc. ("MERS"). *See* Dkt. 32. After reviewing the motion for summary judgment, the response, the reply, and the relevant legal authorities, I recommend that the motion for summary judgment be **GRANTED**. This case should be dismissed.

## BACKGROUND

In 2015, Plaintiff Christopher Baldwin ("Baldwin") purchased a home at 3804 Winter Haven Drive, Baytown, Texas 77521 (the "Property"). To acquire the Property, Baldwin signed a promissory note and executed a Deed of Trust (collectively, "the Loan"). RoundPoint is the authorized mortgage loan servicer with respect to the Loan. MERS is the beneficiary of record of the Deed of Trust.

The Deed of Trust required Baldwin to maintain hazard insurance on the Property. Despite this clear and unequivocal contractual obligation, Baldwin did not procure insurance for the Property. As a result, RoundPoint secured flood insurance coverage for the Property with Great American Insurance Company ("Great American"). After doing so, RoundPoint informed Baldwin that any "insurance proceeds we receive from a policy we purchase on your behalf will be applied in accordance with the provisions of your loan and mortgage." Dkt. 32-1 at 18.

As those in the Gulf Coast region are all too well aware, Hurricane Harvey caused unprecedented flooding and heartache in the fall of 2017. Unfortunately, the Property did not escape the storm's wrath. It sustained significant damage. In the aftermath of the hurricane, RoundPoint made a claim under the applicable insurance policy. Great American investigated the loss, identified some covered damages, and issued payment to RoundPoint for $82,227.99.

On June 15, 2018, after Baldwin provided the documentation required for distribution of a portion of the claim proceeds, RoundPoint distributed $40,000 of the claim proceeds to Baldwin and his selected contractor. RoundPoint also informed Baldwin that the next $40,000 of claim proceeds would be distributed to him and his contractor when repairs were certified to be at least 49 percent complete. On September 12, 2018, RoundPoint received an inspection report showing the repairs to be 60 percent complete. That same day, the next $40,000 in claim proceeds were distributed to Baldwin and his contractor. RoundPoint held

2

the remaining $2,227.99 in claim proceeds in a restricted escrow account. In June 2019, RoundPoint told Baldwin that it would disburse the remaining $2,227.99 once it received an inspection report showing that repairs were 100 percent complete. To date, Baldwin has not provided RoundPoint with the requested inspection report.

Baldwin originally filed this lawsuit against Great American, RoundPoint, and MERS in Texas state district court. Great American timely removed the case to federal court based on diversity jurisdiction, and I dismissed Great American from the lawsuit shortly thereafter under Federal Rule of Civil Procedure 12(b)(6). Against RoundPoint and MERS, Baldwin has alleged the following causes of action: (1) breach of contract; (2) promissory estoppel/detrimental reliance; (3) common law fraud; (4) violations of Chapter 541 of the Texas Insurance Code; (5) violations of the Texas Deceptive Trade Practices Act ("DTPA"); and (6) breach of fiduciary relationship.

## SUMMARY JUDGMENT STANDARD

Rule 56 authorizes summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its

3

claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 19, 2019).

## ANALYSIS

### A. BREACH OF CONTRACT

To succeed on a breach of contract claim under Texas law, Baldwin must show: "(1) the existence of a valid contract; (2) performance or tendered performance by [Baldwin]; (3) breach of the contract by [Defendants]; and (4) damages sustained by [Baldwin] as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–50 (5th Cir. 2018) (quotation omitted).

In cursory fashion, Baldwin's First Amended Complaint asserts that "plaintiff and the defendant had a firm agreement," "plaintiff fulfilled his portion of that agreement," and "defendant has refused to acknowledge the validity of the

4

plaintiff's claim." Dkt. 8 at 5. That's basically it. Nothing more. From reviewing the operative pleading, it's difficult to tell what purported agreement Baldwin refers to or even the identity of the counter party to the alleged agreement. In his summary judgment response, Baldwin asserts that RoundPoint somehow breached the Deed of Trust. Specifically, Baldwin focuses on the following provision from the Deed of Trust:

> In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Dkt. 32-1 at 11. Notably, Baldwin fails to explain how RoundPoint breached this contractual provision. The summary judgment record conclusively establishes that RoundPoint fulfilled its contractual responsibilities. The referenced section of the Deed of Trust gives RoundPoint discretionary authority to disburse funds at various stages of repairs on the Property. The language in the Deed of Trust is plain and unambiguous: "All or any part of the insurance proceeds may be applied by [RoundPoint] *at its option* . . . to the restoration or repair of the damaged

5

Property." *Id.* (emphasis added). As noted, RoundPoint received $82,227.99 in insurance proceeds from Great American and set up a streamlined process to distribute those funds to Baldwin and his contractor. After Baldwin provided RoundPoint with inspection reports demonstrating satisfaction of certain completion milestones, RoundPoint distributed a total of $80,000 to Baldwin—one $40,000 payment made in June 2018 and the other $40,000 payment made in September 2018. RoundPoint is holding another $2,227.99 in a restricted escrow account. RoundPoint informed Baldwin that he would receive the remaining funds when he submitted an inspection report showing that repairs were 100 percent completed. Although Baldwin has known this for more than a year and a half, he still has not supplied RoundPoint with the requested paperwork.

Baldwin's breach of contract claim fails because he has been unable to offer any evidence creating a genuine issue of material fact that RoundPoint breached the Deed of Trust. Based on the record before me, I conclude that RoundPoint has satisfied its obligations under the Deed of Trust. Baldwin's breach of contract claim should be dismissed.

### B. PROMISSORY ESTOPPEL

Baldwin also asserts a promissory estoppel claim. "Under Texas law, although promissory estoppel is primarily a defensive theory, it is also available as a cause of action for a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise." *Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 365 (5th Cir. 2013) (quotation omitted). The

elements of a promissory estoppel claim are (1) a promise; (2) reasonably foreseeable reliance on that promise by the promisee; and (3) the promisee "materially chang[ing] his position in reliance on the promise" to his detriment. *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.). As to the first element, the alleged promise "must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108) (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Baldwin's promissory estoppel claim should be dismissed on summary judgment grounds because Baldwin has not presented any evidence of a promise. *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.) ("To enforce a representation by promissory estoppel, the first requisite is an actual promise."). That's right. Although RoundPoint and MERS both argued in the summary judgment papers that Baldwin had failed to allege an actual promise, Baldwin ignored the argument completely in his response. His claim for promissory estoppel fails on this ground alone.

Baldwin's promissory estoppel claim also fails because the Texas statute of frauds bars any claims inconsistent with the terms of the promissory note and Deed of Trust. *See Fath v. BAC Home Loans*, No. 3:12-CV-1775-O, 2013 WL 3203092, at *6 (N.D. Tex. June 25, 2013) ("[A]ny oral statements that Plaintiff claims modified, terminated, or otherwise altered the Deed of Trust, the Note, or

7

any other agreement between the parties are barred by the statute of frauds."). The promissory estoppel claim should be dismissed.

### C. FRAUD

Next, Baldwin brings a fraud claim. Texas law requires the following elements to make out a fraud claim: "(1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002).

RoundPoint and MERS argue that they are entitled to judgment as a matter of law on the fraud claim because Baldwin has not provided evidence of a misrepresentation that caused damages. More specifically, RoundPoint and MERS claim that Baldwin has failed to meet his obligation under Rule 9(b) to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quotation omitted). I agree with RoundPoint and MERS.

Baldwin's discussion on the fraud claim spans roughly a page and a half and consists of nothing more than listing the elements for common law fraud, fraudulent inducement, and statutory fraud. Tellingly, Baldwin fails to respond to the Rule 9(b) argument advanced by RoundPoint and MERS. He also fails to provide any explanation or reasoning as to the underlying basis for his fraud claim.

8

What is the allegedly fraudulent statement? Who made it? When was it made? None of these basic questions are answered in the pleadings or the summary judgment record. Baldwin bears the burden of proof on his fraud claim but is unable to produce any evidence to support it. Summary judgment is appropriate against Baldwin on the fraud claim. *See Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010) (When "a defendant moves for summary judgment and correctly points to an absence of evidence to support the plaintiff's claim on an issue as to which plaintiff would bear the burden of proof at trial, then summary judgment should be granted for the defendant.").

**D.    CHAPTER 541 OF THE TEXAS INSURANCE CODE**

Baldwin also claims that RoundPoint and MERS have violated Chapter 541 of the Texas Insurance Code. Chapter 541 "regulate[s] trade practices in the business of insurance." TEX. INS. CODE § 541.001. In line with this objective, Chapter 541 "prohibits *insurers* from engaging in various unfair or deceptive acts or practices." *Garza v. Allstate Fire & Cas. Ins. Co.*, 466 F. Supp. 3d 705, 710 (S.D. Tex. 2020) (quotation omitted and emphasis added). RoundPoint and MERS are not insurers. As a result, they are not subject to liability under Chapter 541 of the Texas Insurance Code. Case closed.

In his response to the motion for summary judgment, Baldwin argues for the first time that Defendants have violated sections 557.002 and 557.003 of the Texas Insurance Code. Critically, Baldwin did not raise this cause of action anywhere in his First Amended Complaint. It is axiomatic that a plaintiff may not assert a new

9

claim in response to a motion for summary judgment that he has not previously raised. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Moreover, even if these claims were properly before me, they fail as a matter of law because the relevant statutory provisions impose duties owed by a mortgagee to an "insured." TEX. INS. CODE §§ 557.002–.003. Baldwin is not an "insured" under the Great American policy. In fact, the insurance policy identifies RoundPoint as the sole "insured." As such, RoundPoint owes Baldwin no duty under Sections 557.002 or 557.003 of the Texas Insurance Code.

**E.    DTPA**

In the First Amended Complaint, Baldwin also raises a cause of action under the DTPA, asserting that RoundPoint and MERS made false and misleading statements. Baldwin has no standing to pursue this claim because he is not a "consumer" under the DTPA.

To bring a cause of action under the DTPA, Baldwin must have standing as a "consumer." TEX. BUS. & COM. CODE § 17.50(a). The DTPA defines a consumer, in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." *Id.* § 17.45(4). To establish consumer status under the DTPA, a plaintiff must show: (1) that he acquired goods or services by purchase or lease; and (2) "that the goods or services purchased or leased . . . form the basis of the complaint." *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15

10

(Tex. 1987). Whether Plaintiffs are consumers under the DTPA is a question of law. *See Hous. Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 572–73 (Tex. App.—Austin 2003, no pet.).

Baldwin's DTPA claims arise from a loan transaction, but "a loan transaction cannot be challenged under the DTPA because the plaintiff sought or acquired money, which is not a good or a service." *Whittier v. Ocwen Loan Servicing, LLC*, No. H-12-3095, 2013 WL 5425294, at *7 (S.D. Tex. Sept. 25, 2013). As a result, Baldwin does not qualify as a consumer under the DTPA. *See Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 735 (E.D. Tex. 2011) ("Because lending money does not constitute the acquisition of a good or service, this court finds that Plaintiffs do not qualify as 'consumers' . . . and do not have standing under the DTPA."); *Marketic v. U.S. Bank Nat'l Ass'n.*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) ("[M]erely obtaining a loan or an extension of credit does not qualify one as a 'consumer.'"). His DTPA claim must be dismissed.

**F.     FIDUCIARY DUTY**

Last but not least, Baldwin asserts that RoundPoint and MERS breached their fiduciary duties to him. To succeed on this claim, Texas law requires "(1) a fiduciary relationship between the plaintiff and defendant[s], (2) a breach by the defendant[s] of [their] fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant[s] as a result of the defendant[s'] breach." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Summary judgment is warranted here because no fiduciary

11

relationship exists between Baldwin, as plaintiff, and RoundPoint and MERS, as defendants.

Texas law views a fiduciary relationship as "an extraordinary one [that] will not be lightly created." *Chapman Child. Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). There are two types of fiduciary relationships: (1) a "formal" relationship where the duty arises as a matter of law (such as attorney-client, principal-agent, trustee-beneficiary, or partners in a partnership); and (2) an "informal" relationship where the duty arises from a moral, social, domestic, or personal relationship called a "confidential" relationship. *See id.*

The summary judgment record contains no evidence suggesting that a fiduciary relationship existed between Baldwin and the Defendants in this case. Viewed in the light most favorable to Baldwin, the relationship between Baldwin and RoundPoint/MERS was nothing more than that of a lender and a borrower, a relationship that is insufficient as a matter of law to give rise to a fiduciary duty. *See Fed. Deposit Ins. Corp. v. Claycomb*, 945 F.2d 853, 859 (5th Cir. 1991) ("The borrower-lender relationship, with which we are here concerned, does not give rise to a 'fiduciary' or 'special relationship.'"); *In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999) (Under Texas law, "[l]enders and their agents ordinarily have no fiduciary duty to borrowers or putative borrowers."); *Mfrs.' Hanover Tr. Co. v. Kingston Invs. Corp.*, 819 S.W.2d 607, 610 (Tex. App—Houston [1st Dist] 1991, no writ) ("It is well settled that the relationship between a borrower and its

12

lender is neither a fiduciary relationship, nor a special relationship."). The reason a borrower-lender relationship does not give rise to a special fiduciary relationship is because a transaction between a borrower and lender is generally done at arm's length, with both parties looking out for their own interests. *See Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007).

Texas courts have found fiduciary relationships between borrowers and lenders only where special circumstances, like "extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities" exist. *Walker v. Willow Bend Mortg. Co.*, No. 3:18-CV-0666-D, 2019 WL 1569683, at *4 (N.D. Tex. Apr. 11, 2019) (quotation omitted). *See also Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998) ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."). Baldwin does not allege—much less provide any summary judgment evidence demonstrating—that any such special circumstances exist here.

Baldwin argues that the "defendants occupied the position of fiduciaries towards the plaintiff with relation to the monies paid over to them by the insurance company." Dkt. 37 at 17. Baldwin also claims that he "is wholly dependent upon [RoundPoint/MERS] to carry out their duties towards him for his injuries to be made whole." *Id.* This argument falls flat. RoundPoint procured insurance coverage on the Property when Baldwin failed to maintain homeowner's insurance, as he was contractually obligated to do. There is nothing about this purchase that

13

magically created a duty of the highest loyalty. Indeed, one Texas appellate court has specifically found that no fiduciary relationship exists between a lender and a borrower in the context of a lender-placed insurance policy. *See Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 333 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("BAC had no duty (agency-based or otherwise) to [ensure] Garcia received any benefits under the lender-placed policy, so no fiduciary duty could be based on such an alleged duty or agency relationship.").

Because there is no fiduciary relationship—formal or informal—between Baldwin and RoundPoint/MERS, summary judgment is appropriate on this claim.

## CONCLUSION

For the reasons identified above, I **RECOMMEND** that Defendants' Motion for Final Summary Judgment (Dkt. 32) be **GRANTED**. This case should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002—13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 1st day of March 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE